SAMUEL BLAISDELL, JR. & others *vs.* CONNECTICUT RIVER
RAILROAD COMPANY.

Hampden.    Sept. 28. — Oct. 20, 1887.    C. ALLEN & HOLMES, JJ., absent.

If goods, which have been transported over a railroad, and have been received by
the owner and placed in a storehouse, occupied exclusively by him and owned by
the corporation, adjoining its freight depot at a station, and other goods therein
intended for transportation, but not having been delivered to the corporation,
are destroyed by fire communicated by its locomotive engine, the owner may
maintain an action against the corporation, under the Pub. Sts. *c.* 112, § 214, for
the loss of the goods.

TORT, under the Pub. Sts. *c.* 112, § 214, for loss of the plain-
tiffs' goods by fire communicated by a locomotive engine of the
defendant. The case was submitted to the Superior Court, and,
after judgment for the plaintiffs, to this court, on appeal, upon
agreed facts, the material parts of which appear in the opinion.

*G. D. Robinson,* for the plaintiffs.

*G. Wells,* (*G. M. Stearns* with him,) for the defendant.

KNOWLTON, J. For the reasons set forth in *Bassett* v. *Con-
necticut River Railroad, ante,* 129, a railroad corporation is not
liable under the Pub. Sts. *c.* 112, § 214, for goods destroyed by
fire while in its possession under a contract for carriage. The
question in this case is whether the plaintiffs' property, at the
time of the fire, was in the defendant's possession under such a
contract.

The plaintiffs were large shippers of merchandise over the
defendant's road, and the defendant built for their use, as an
addition to its depot, a storehouse separated from the general
freight-house by a brick wall. This the plaintiffs had occupied
for two years in connection with their business, and, up to Octo-
ber 1, 1886, they had paid an agreed price per month for it. It
can hardly be contended that, during this period, they were not
the defendant's tenants, and in exclusive possession and control
of all that the storehouse contained.

On September 21, 1886, they notified the defendant that,
by reason of the completion of a new building elsewhere, they
should not need the storehouse after October 1. On November 1
following, the station agent at Chicopee presented them a bill

for the rent of the premises for the month of October, which had been sent him for collection by the defendant's auditor, in accordance with a usual practice, and without special directions from the president or superintendent regarding it.   The plaintiffs declined to pay it, referring to their previous notification, and no bill was afterwards sent.   The station agent informed the superintendent by letter of their refusal, and of their saying that " they would pay no more rent for the storehouse, thinking they should have it free now and would keep the cars cleaned out."   He also inquired if there was any error in sending the bill, and asked the superintendent to advise the plaintiffs of the company's position.   No reply was sent to the agent, nor communication to the plaintiffs, and they continued until the time of the fire, in March, 1887, " to use and occupy the storehouse in the same manner and for the same purposes as before, which use was known by the station agent, but the agent did not know whether or not any arrangement had been made with the president or superintendent for such use, but such use was without any objection on the defendant's part, and no other persons used the storehouse."   The property destroyed " had been received by the plaintiffs in the course of their said business by or for transportation."

Upon these facts, the plaintiffs were in possession and control of the property in the storehouse, as well after as before October 1, 1886.   The goods which had come over the defendant's road had been " received " by the plaintiffs and kept in the storehouse, some of them a day or two at the time of the fire, and some of them for months.   There is nothing to indicate that the contract under which the defendant carried them had not been fully performed, and, so far as appears, the defendant did not seek to retain a lien upon them, but allowed the plaintiffs to take them into their absolute control; and the facts do not find that the goods in the storehouse " received by the plaintiffs " for transportation had ever been delivered to the defendant so that the parties had come into relations of contract regarding them.   The defendant did not use the storehouse, nor have the custody of anything in it.   It is quite immaterial whether the relation of landlord and tenant continued to exist between the parties, or whether the plaintiffs, after receiving

freight which had been transported over the defendant's railroad, left it in one of the defendant's buildings by sufferance. The test question is, as to the goods which had been transported over the railroad, whether they had been given up to the owner so that the contract for carriage, and incidentally for storage for a reasonable time or until delivery, no longer applied to them, and, as to those which were intended for transportation, whether they had been delivered to the corporation so that the contemplated contract had taken effect.

If, as contended by the defendant, contributory negligence of the plaintiffs would bar their recovery, which we do not decide, we find in their conduct no want of due care.

The property having been destroyed by fire communicated by a locomotive engine of the defendant, and not having been at the time in the possession of the defendant under a contract fixing the rights and liabilities of the parties regarding it, the plaintiffs may recover the value of it, and the entry must be,

*Judgment affirmed.*